IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02973-REB-MEH

JON A. GOODWIN, an individual, directly and derivatively in the right of and for the benefit of
Barra Partners, LLC, a Delaware limited liability company,

      Plaintiff,

v.

MARCIA ANN BRUGGEMAN-HATCH, an individual,
SEAMUS JOHN PAUL HATCH, an individual,
MICHAEL DOUGLAS BOCK, an individual,
ARAN STRATEGIC FINANCE, LLC a limited liability company,
DAVID MARK JARGIELLO, an individual,
BARRY S. LEVIN, an individual,
ROBERT A. EPSEN, an individual,
MATTHEW L. LARRABEE, an individual,
HELLER EHRMAN LLP, a limited liability partnership,
TIMOTHY ROBBINS, an individual,
THOMAS F. VILLENEUVE, an individual,
KENNETH ROBERT MCVAY, an individual,
IVAN ALEXANDER GAVIRIA, an individual,
DANIEL JURG NIEHANS, an individual,
DANIEL E. O'CONNOR, an individual,
SCOTT ARMIENTI, an individual,
JONATHAN M. GLEASON,
SCOTT C. DETTMER, an individual,
ROBERT V. GUNDERSON, JR., an individual,
MICHELLE ROBERTSON, an individual,
GUNDERSON DETTMER STOUGH VILLENEUVE FRANKLIN & HACHIGIAN, LLP, a
limited liability partnership,
MILES FREDERICK EHRLICH, an individual,
RAMSEY & EHRLICH LLP, a limited liability partnership,
DENELLE MARIE DIXON-THAYER, an individual,
JOHN DANIEL SHARP, an individual,
MICHAEL ALEXANDER KAHN, an individual,
DIANE D. BLICK, an individual,
FOLGER LEVIN KAHN, LLP, a limited liability partnership,
RICHARD S. WARLEY, an individual,
SAVVIS, INC., a corporation,
SUE M. KAPLAN, an individual,
TINA LOUISE SCATUORCHIO-GOODWIN, an individual,
HARRY STORER SCOTT, an individual,

NEVILLE L. JOHNSON, an individual,
DOUGLAS L. JOHNSON, an individual,
LAN PHOJNG VU, an individual,
JOHN DALE FOWLER, an individual,
JONATHAN MARTIN TURCO, an individual,
VIKTORIYA CASSIS, an individual,
RADINE SABLAN, an individual,
ANGELA TORABYAN, an individual,
SHAKE ANDREASIAN, an individual,
JOHNSON & JOHNSON LLP, a limited liability partnership,
PAUL WILLIAM TWEED, an individual,
KATHRYN HELENA LOUISE MATHEWS, an individual,
PAUL TWEED LLP, a business entity,
JOHNSONS LAW FIRM, a business entity,
VAL COOK, an individual,
TWITTER, INC., a corporation,
VENTURE LAW GROUP, a professional corporation,
HELLER EHRMAN (CALIFORNIA), a professional corporation,
SIMON LUK, an individual,
RUSSELL A. STAMETS, an individual,
JEFFREY L. SCHOTTLER, an individual,
JOHN C. GONZALEZ, an individual,
KANNAN P. SRINIVASAN, an individual,
MAYNARD JR GAMEZ, an individual,
SEAN HART, an individual,
EMILY WARREN CHURCH, an individual,
ARAN VENTURES, a business entity, form unknown,
ARAN DEVELOPMENT, a business entity, form unknown,
ERIC VAUGHN TRAUT, an individual,
DIANA BIAFORA SPARAGNA, an individual,
BARRA PARTNERS, LLC, actually named as nominal defendant,

       Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

       Before the Court is the Motion to Dismiss (filed January 13, 2014; Doc. # 65) filed by

Defendants Paul Tweed, Kathy Mathews, Johnsons Law Firm, and Paul Tweed, LLP (collectively,

the "Belfast Defendants").[1]  Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1(c),

the matter is referred to this Court for recommendation.  (Doc. # 66.)  The motion is fully briefed,

and oral argument would not materially assist the Court in its adjudication.  For the reasons that

follow, the Court respectfully RECOMMENDS that the Motion to Dismiss be **granted**.[2]

## BACKGROUND

Plaintiff, Jon A. Goodwin, initiated this action on October 30, 2013, and proceeds *pro se*.

His complaint contains twenty-two claims for relief against sixty-six defendants arising from the

2003 break-up of Barra Partners, LLC, a merchant banking firm.  (Doc. # 1.)  Plaintiff asserts nine

claims against the Belfast Defendants: (1) Operation of a RICO Enterprise in violation of 18 U.S.C.

§ 1962(c) (First Claim for Relief); (2) Conspiracy to Violate RICO in violation of 18 U.S.C. §

1962(d) (Second Claim for Relief); (3) Conducting an Enterprise Through a Pattern of Racketeering

Activity in violation of Colo. Rev. Stat. § 18-17-104(3) (Third Claim for Relief); (4) Racketeering

Conspiracy in violation of Colo. Rev. Stat. § 18-17-104(4) (Fourth Claim for Relief); (5)

---

[1]This is the Defendants' preferred moniker based on their connection with the city of Belfast, United Kingdon.

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72(b).  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

Deprivation of Rights of Due Process and Equal Protection pursuant to 42 U.S.C. § 1983 (Ninth Claim for Relief); (6) Deprivation of Rights of Free Speech, Expression, Press, Petition, and Association as Guaranteed by the First Amendment pursuant to 42 U.S.C. § 1983 (Tenth Claim for Relief); (7) Aiding, Abetting, or Participation in a Fraudulent Scheme (Eighteenth Claim for Relief); (8) Intentional Infliction of Emotional Distress (Nineteenth Claim for Relief); and (9) Civil Conspiracy (Twentieth Claim for Relief).

Plaintiff's claims are based on the following factual allegations concerning the Belfast Defendants. Plaintiff published statements on a website criticizing four other Defendants in this case—Marcia Bruggeman-Hatch, Gunderson Dettmer Stough Villeneuve Franklin & Hachigian LLP ("Gunderson Dettmer"), Eric Traut, and Diana Sparagna—all of whom are located in California. According to Plaintiff, the statements accurately describe certain "nefarious activities" engaged in by those Defendants. However, those Defendants considered the statements defamatory, and retained Defendant Johnsons Law Firm of the United Kingdom to secure their removal from the internet. Defendant Tweed is a senior partner with the Johnsons Law Firm, and Defendant Mathews is a solicitor with the firm. Defendant Mathews sent correspondence to Plaintiff's New Zealand mailing address, to his email, and to the European company that hosts the website. All of this correspondence sought the removal of the purportedly defamatory statements, in accord with the United Kingdom's libel law. Eventually, the statements were removed from the website.

In their Motion to Dismiss, the Belfast Defendants contend that Plaintiff's claims should be dismissed (1) for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and (2) for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The Court will consider the Belfast Defendants' arguments in that order.

4

## LEGAL STANDARDS

The Court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).  According to the Tenth Circuit, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

A plaintiff bears the burden of establishing personal jurisdiction over each defendant. *Greenway Nutrients, Inc. v. Blackburn*, --- F. Supp. 2d ---, ---, 2014 WL 1243671, at *7 (D. Colo. Mar. 26, 2014) (citing *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008)).  The Court accepts a plaintiff's well-pled allegations as true to determine whether the plaintiff has made a prima facie showing that the defendants are subject to the Court's personal jurisdiction. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The Court "may also consider affidavits and other written materials submitted by the parties." *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F.Supp.2d 1186, 1189 (D. Colo. 2004).

A plaintiff may prove that personal jurisdiction exists over a defendant in three ways that are relevant here.  First, the plaintiff may show that Colorado's long-arm statute authorizes personal

jurisdiction, so long as it would be consistent with the Fourteenth Amendment's Due Process Clause. *See Greenway Nutrients, Inc.*, 2014 WL 1243671, at *7 (explaining that "Colorado's long arm statute is coextensive with constitutional limitations"). Second, in certain cases, the plaintiff may invoke RICO's nationwide service of process to establish personal jurisdiction, so long as the Fifth Amendment's Due Process Clause is satisfied. *See Cory v. Aztec Steel Building, Inc.*, 468 F.3d 1226, 1231 (10th Cir. 2006). Third, the plaintiff may show that personal jurisdiction exists pursuant to Fed. R. Civ. P. 4(k)(2), which, in some circumstances, authorizes personal jurisdiction over civil RICO defendants served with process outside of the United States, again to the extent consistent with Fifth Amendment Due Process. *See CGC Hldgs. Co., LLC v. Hutchens*, 824 F. Supp. 2d 1193, 1199-1200 (D. Colo. 2011) (citing *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 941-42 (7th Cir. 2000)).

## DISCUSSION

The Belfast Defendants contend that Plaintiff has failed to establish that this Court has specific or general personal jurisdiction over them. They assert that they have not committed any intentional acts aimed at Colorado that caused harm to Plaintiff. They further assert that they do not have "continuous and systematic contacts" with this State. In response, Plaintiff contends that all of the Belfast Defendants directed certain activities at Plaintiff in Colorado. He also argues that personal jurisdiction may be established in Colorado pursuant to RICO's "nation-wide service of process" provision, citing 18 U.S.C. § 1965(b). Finally, Plaintiff appears to argue that personal jurisdiction is proper because RICO may permit courts to exercise subject matter jurisdiction over claims arising from conduct outside the United States.

6

A.  **PERSONAL JURISDICTION**

    1.   <u>Traditional Minimum Contacts</u>

        a.   *Legal Standards*

The first method for establishing personal jurisdiction is by authority of Colorado's long-arm statute, which is coextensive with the limits of Fourteenth Amendment Due Process. *See Greenway Nutrients, Inc.*, 2014 WL 1243671, at *7. The Due Process Clause permits the exercise of personal jurisdiction over nonresident defendants when two conditions are met. First, a defendant must have "minimum contacts" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Second, if sufficient minimum contacts are shown, the Due Process Clause requires that the exercise of personal jurisdiction over the defendant would not "offend traditional notions of fair play and substantial justice." *Impact Prods.*, 341 F. Supp. 2d at 1190.

The "minimum contacts" standard may be met in two ways. First, a court may, consistent with due process, assert specific jurisdiction over a nonresident defendant "if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations omitted). Where a court's exercise of jurisdiction does not directly arise from or relate to a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415-16 (1984). However, to be subject to general jurisdiction in a forum state, a defendant's affiliations with that state must be "so 'continuous and systematic' as to render [it] essentially at home" there. *Daimler AG v. Bauman*, --- U.S. ---, ---, 134 S. Ct. 746, 761 (2014) (internal quotation marks and

citation omitted).

        *b.*    *Analysis*

Plaintiff has not made a *prima facie* showing that any of the Belfast Defendants satisfy the traditional minimum contacts test.

Plaintiff has not established that Defendant Mathews "purposefully directed" her activities at Plaintiff in Colorado.  Defendant Mathews has submitted an affidavit explaining that between September 15, 2010, and September 29, 2010, she sent three letters to Plaintiff.  (Doc. # 65-1.)  Each letter was sent to Plaintiff's  registered postal address in New Zealand and to his email address.  According to the affidavit, she also sent a letter and two emails to CSL Computer Service Langenbach GmbH ("CSL"), the Swiss Company that hosts Plaintiff's website.  The letter was sent to CSL's postal address in Germany.  Each piece of correspondence was sent on behalf of other Defendants in this lawsuit, as described above, requesting the removal of false and defamatory publications from Plaintiff's website, in accordance with the United Kingdom's libel law.  Defendant Mathews asserts that at no time did she know or have reason to know that Plaintiff was located in Colorado, and she did not purposefully direct the communications to him in Colorado.  (Doc. # 65-1.)

First, with respect to the letters sent by mail, Plaintiff does not dispute that Defendant Mathews purposely directed them at New Zealand, not Colorado.  To argue that her knowledge of his presence in Colorado at that time establishes personal jurisdiction here is "patently frivolous." *See Norsyn, Inc. v. Bank of India*, No. 06-CV-00506-MSK, 2007 WL 840497, at *3 (D. Colo. Mar. 19, 2007) ("[T]he law is clear that merely doing business with a Colorado resident in another state is an insufficient basis to support personal jurisdiction." (citing *Burger King*, 471 U.S. at 478)).

8

With respect to the emails, Plaintiff must show that Defendant Mathews knew he was located in Colorado when she sent them. *See Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011) (citations omitted). Otherwise, the mere fact that he lived in Colorado cannot establish that the emails were purposefully directed at this state. *See id.* Plaintiff argues that when Defendant Mathews emailed the letters, she knew he was in Colorado through a chain of inferential steps beginning with Defendant Neville Johnson. Specifically, he alleges in his verified complaint that on December 22, 2010, Defendant Neville Johnson, an attorney with the law firm Defendant Johnson & Johnson LLP, obtained Plaintiff's internet protocol ("IP") address by subpoena from Defendant Twitter. Next, Plaintiff alleges that Johnson & Johnson LLP has access to an internet database, which could have revealed that the geographical location of Plaintiff's IP address is "in the vicinity of the Colorado residence of [Plaintiff's] relatives." That address is known, Plaintiff alleges, by Defendants Marcia Bruggeman-Hatch and Douglas Bock, and by inference, by their lawyers. (Doc. # 1 at 194, ¶ 611.) Defendant Mathews was one of Defendant Bruggeman-Hatch's lawyers.

Taken as true, these allegations do not plausibly establish that Defendant Mathews knew anything about Plaintiff's location when she sent the acknowledged emails in September 2010, because that was before Defendant Neville Johnson received the subpoenaed information. Consequently, those emails cannot be the basis of specific jurisdiction. That leaves the emails Defendant Mathews allegedly sent on April 11 and 15, 2011. Even if Defendant Mathews did send these to Plaintiff, which she disputes, Plaintiff has not plausibly alleged that she knew he was in Colorado at that time. At most, Plaintiff has alleged that some time after December 22, 2010, Defendant Neville Johnson could have learned that Plaintiff's IP address was assigned to a location

in Colorado where his relatives reside.  However, Plaintiff has not asserted that Defendant Neville Johnson actually discovered the connection between the IP address and the Colorado location or that Plaintiff lived there.  Additionally, Plaintiff alleges no facts to support his conclusion that Defendant Mathews learned of that connection from Defendant Neville Johnson or anyone else.  Given Plaintiff's conceded efforts to conceal his location (Doc. # 1-1 at 2, ¶ 619), and Defendant Mathew's statement in her affidavit, the Court finds that Plaintiff has not plausibly alleged that Defendant Mathews knew Plaintiff was in Colorado in April 2011.  Therefore, Plaintiff has not plausibly alleged that Defendant Mathews purposefully directed her activities toward him in Colorado.

Turning to Defendant Tweed, Plaintiff alleges that he directed his legal representation of Defendants Bruggeman-Hatch, Gunderson Dettmer, Sparagna, and Traut at Colorado.  That he did so can be inferred, he contends, from the fact that those clients knew Plaintiff was located in Colorado.  However, Plaintiff does not allege that Defendant Tweed had any specific contacts with Colorado.  In fact, although he alleges that Defendant Tweed's law firm represented some of the other Defendants in this case, he does not allege any specific acts taken by Defendant Tweed in the course of that representation.  Without identifying some specific activities purposefully directed at the forum state, Plaintiff cannot establish this Court's jurisdiction over Defendant Tweed.  Even assuming that, while outside of Colorado, Defendant Tweed and his clients may have communicated with his clients about Plaintiff, those communications plainly do not constitute activities purposefully directed at Colorado. *Cf. Trierweiler v. Croxton & Trench Hldg. Corp.*, 90 F.3d 1523, 1534 (10th Cir. 1996) (holding that attorney's knowledge that his opinion letter would be sent to forum state did not show that he purposefully availed himself of the privilege of doing business there).

Plaintiff also appears to misapprehend who has the burden of establishing personal jurisdiction. That burden is on him. *See Shrader*, 633 F.3d at 1239. His argument that the Court should disregard Defendant Tweed's affidavit until it can be "tested" implies that the Court should assume that personal jurisdiction is established until Defendant Tweed can prove otherwise. But Plaintiff has not come close to meeting the burden of showing that Defendant Tweed purposefully directed his activities at Plaintiff in the forum state. *See id.* Defendant Tweed's affidavit only bolsters the Court's conclusion that he does not have minimum contacts with Colorado.

Plaintiff has not alleged that the Belfast Defendants had any other contacts with Colorado that might provide a basis for specific or general jurisdiction. Therefore, the Court finds that Colorado's long-arm statute does not authorize personal jurisdiction over any of the Belfast Defendants.

2.   <u>Nationwide Jurisdiction Under RICO</u>

In his response, Plaintiff also contends that this Court may assert personal jurisdiction over the Belfast Defendants pursuant to 18 U.S.C. § 1965 (Doc. # 84 at 8), which authorizes nationwide service of process under certain circumstances. As an initial matter, of the four Belfast Defendants at issue here, only Defendant Tweed was served with process in the United States. (Doc. # 55.) Therefore, if anyone is subject to personal jurisdiction in this Court under § 1965, it could only be him.

"Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) 'whether the exercise of jurisdiction comports with due process.'" *Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206, 1209

(10th Cir. 2000) (quoting *Republic of Panama v. BCCI Hldgs. (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997)).  Pursuant to 18 U.S.C. § 1965, "[w]hen a civil RICO action is brought in a district court where personal jurisdiction can be established over at least one defendant, summonses can be served nationwide on other defendants if required by the ends of justice." *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1231 (10th Cir. 2006).  Therefore, for this Court to exercise personal jurisdiction over the Belfast Defendants, (1) it must have personal jurisdiction over at least one Defendant in this action based on minimum contacts and (2) it must be necessary to satisfy the "ends of justice." *See id.*  In addition, the court's exercise of personal jurisdiction must comport with Fifth Amendment due process.  *See id.* at 1229 (citation omitted).

Plaintiff contends that the first requirement is met because this Court may exercise personal jurisdiction over multiple Defendants in this case.  (Doc. # 84 at 9-10.)  Rather than dispute that point, the Belfast Defendants turn to the second requirement, arguing that the "ends of justice" do not require the exercise of nationwide jurisdiction.  (Doc. # 120 at 8-9.)  The Court agrees that Plaintiff has not satisfied the "ends of justice" requirement.

"[T]he 'ends of justice' is a flexible concept uniquely tailored to the facts of each case." *Cory*, 468 F.3d at 1232.  The "ends of justice" should be interpreted in light of RICO's remedial purposes: eradicating organized crime.  *Id.* at 1231-32.  However, a plaintiff's having sustained damages and litigation costs in the forum state, standing alone, does not satisfy the "ends of justice" standard.  *Id.* at 1232.  Here, Plaintiff offers nothing but the conclusory statement that "in the instant case" the "ends of justice" require nationwide personal jurisdiction.  (Doc. # 84 at 8.)  This bare conclusion falls far short of meeting the "ends of justice" requirement.

In arguing that nationwide personal jurisdiction is appropriate under § 1965(b), Plaintiff seeks support in *Heller v. Deutsche Bank AG*, No. Civ. A. 04-CV-3571, 2005 WL 281181 (E.D. Pa. Feb. 3, 2005).  However, in that case the court found the minimum contacts requirement satisfied because the defendants had purposefully directed activities at the forum state. *Id.* at *4-6.  The court invoked § 1965 only in establishing that venue was proper. *Id.* at *7-8.  As explained above, Plaintiff has not established minimum contacts with respect to any of the Belfast Defendants. Therefore, *Heller* is of no help to him.

Having found that § 1965(b) does not authorize nationwide personal jurisdiction in this case, the Court need not consider whether Fifth Amendment due process would be satisfied. *See Cory*, 468 F.3d at 1232-33.

### 3.   Extraterritorial Jurisdiction Pursuant to RICO

In his final argument regarding personal jurisdiction, Plaintiff contends that RICO may apply to the Belfast Defendants's conduct outside of the United States because "their conduct is aimed at victims in the U.S. and its effects have substantially occurred here."  (Doc. # 84 at 10-11 (citing *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010).)  When construed liberally, *see Hall*, 935 F.2d at 1110, Plaintiff's argument appears to be that RICO, a federal statute, authorizes extraterritorial service of process and thus personal jurisdiction.  Indeed, Fed. R. Civ. P. 4(k) authorizes extraterritorial service of process in certain circumstances.  Specifically, the claim must "arise[] under federal law," the defendant must not be "subject to jurisdiction in any state's courts of general jurisdiction," and exercising jurisdiction must be "consistent with" the Constitution and federal law. *Id.* 4(k)(2).  Moreover, personal jurisdiction must be consistent with Fifth Amendment due process. *CGC Hldgs. Co.*, 824 F. Supp. 2d at 1200 (citations omitted).

Before analyzing the applicability of Rule 4(k)(2), the Court makes two observations. First, because it appears Defendant Tweed is subject to personal jurisdiction in California, Rule 4(k)(2) cannot establish personal jurisdiction over him. *See* Fed. R. Civ. P. 4(k)(2)(A). Second, even if personal jurisdiction were appropriate over some of the Belfast Defendants pursuant to Rule 4(k)(2), it would be only for the RICO claims. As a result, the Court would have to exercise pendent personal jurisdiction over the non-RICO claims. *See United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002) ("Pendent personal jurisdiction . . . exists when a court possesses personal jurisdiction over the defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." (citations omitted)). Moreover, if the RICO claims fail as a matter of law, then that statute cannot support personal jurisdiction over any of the Belfast Defendants.

Turning now to the Belfast Defendants arguments, they contend that (1) RICO does not authorize extraterritorial personal jurisdiction, (2) their conduct was extraterritorial and thus beyond RICO's reach, and (3) exercising extraterritorial jurisdiction over them would be inconsistent with due process.

First, the Court disagrees that RICO must *authorize* extraterritorial personal jurisdiction. As explained in *CGC Holdings Co., LLC*, it is enough that RICO is *consistent with* worldwide service of process. *See* 824 F. Supp. 2d at 1199-1200. Therefore, extraterritorial personal jurisdiction may be proper in this case if the other requirements of Fed. R. Civ. P. 4(k)(2) are satisfied, including Fifth Amendment due process.

Second, the Belfast Defendants argue that their conduct is beyond RICO's reach because it

14

occurred outside of the United States.  The Court agrees that RICO does not apply to extraterritorial conduct.  *See CGC Hldgs. Co., LLC v. Hutchens*, 824 F. Supp. 2d 1193, 1208 (D. Colo. 2011) ("Courts have . . . agreed that RICO provides no indication of an extraterritorial application."). However, whether the Belfast Defendants' alleged conduct occurred outside the United States and, thus, beyond the reach of RICO, is a question of whether the complaint states a claim for which a federal court may grant relief.  *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29, 31 (2d Cir. 2010).  Therefore, it is not an appropriate ground for finding lack of personal jurisdiction.[3]

Third, the Court finds that exercising personal jurisdiction over the Belfast Defendants would not offend the Fifth Amendment's guarantee of due process.  *See Peay*, 205 F.3d at 1211.  Due process requires the Court to consider the quantity and quality of the Belfast Defendants' contacts with the United States as a whole, rather than Colorado.  *See Pandaw America, Inc. v. Pandaw Cruises India Pvt. Ltd.*, 842 F. Supp. 2d 1303, 1311 (D. Colo. 2012) (citing *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1295 (Fed. Cir. 2009)).  This requires showing that the Belfast Defendants (a) committed an intentional act, (b) that was expressly aimed at the United States, (c) with knowledge that the brunt of the injury would be felt in the United States.  *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008). In addition, Plaintiff must show that his injuries arise out of the Belfast Defendants' contacts with the United States.  *See id.* at 1078.

Here, there is no dispute that the Belfast Defendants intentionally sent correspondence to

---

[3] Nonetheless, the Court will consider whether Plaintiff's claims would involve an impermissible extraterritorial application of RICO below.  Because the Court finds that it would, and as a result that Plaintiff's RICO claims fail, there is no basis for pendent personal jurisdiction over Plaintiff's other claims.

Plaintiff and to CSL, satisfying the intentional-act requirement.  In addition, the Belfast Defendants appear to have sent this correspondence with the express aim of stopping publication of the Plaintiff's website in the United States.  Indeed, the website purportedly contained defamatory messages about the Belfast Defendants' clients in California, and the purpose of removing them was to stop alleged damage done there.  Therefore, although it is not clear that any correspondence was sent directly to the United States, the Belfast Defendants' express aim was Plaintiff's messages in the United States.  *See Dudnikov*, 514 F.3d at 1076.  Finally, the brunt of the purported damage to Plaintiff occurred in the United States, as his purpose in publishing the messages was to "warn the public" about the Belfast Defendants' California clients, and those messages were removed in response to the Belfast Defendants' actions.  (Doc. # 84 at 5-6.)  Eventually, the messages allegedly were removed.  (Doc. 84 at 18.)  In addition, Plaintiff's claim against the Belfast Defendants arises out of these contacts.  The removal letters and emails are precisely the means by which the Belfast Defendants allegedly participated in the scheme against Plaintiff.

Next, the Court considers whether exercising personal jurisdiction over the Belfast Defendants would be "reasonable and fair."  *Pandaw America, Inc.*, 842 F. Supp. 2d at 1311 (citing *Synthes*, 563 F.3d at 1297).  Because the Court has found that the Belfast Defendants' activities were directed at the United States and that Plaintiff's claims arise from those activities, "jurisdiction is presumptively constitutional, and the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Id.* at 1313.  In deciding whether a defendant has met that burden, the Court looks to five factors:

> (1) the burden on the defendant; (2) the [United States'] interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering

16

fundamental substantive social policies.

*Id.* at 1312-13 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Defendants argue that all of these factors weigh against this Court exercising personal jurisdiction over them.  (Doc. # 65 at 10.)  Plaintiff has offered no argument specifically addressing this issue.

The first factor weighs in favor of the Belfast Defendants.  Given their location in the United Kingdom, the inconvenience to them if they are required to defend this case in Colorado rises to a constitutional level.  Defendant Mathews states in her affidavit that she has no reason, personal or professional, to travel to Colorado.  (Doc. # 65-1 at 5.)  According to Defendant Tweed's affidavit, neither he, the Johnsons Law Firm, nor Paul Tweed, LLP, solicits business in Colorado or has any other reason to travel to Colorado.  Defendant Johnsons Law Firm maintains offices only in Belfast, London, and Dublin; not one is located in the United States.  Defendant Paul Tweed, LLP is registered only in the United Kingdom. (Doc. # 65-7 at 4-5.)  Therefore, requiring the Belfast Defendants to travel from the United Kingdom solely to defend this lawsuit would be unduly expensive and inconvenient.  The second factor weighs in Plaintiff's favor.  Plaintiff alleges a violation of federal anti-conspiracy laws; thus, the United States has a significant interest in resolving this case.  *See Pandaw*, 842 F. Supp. 2d at 1313 (citing *Sunshine Dist. Inc. v. Sports Authority Michigan, Inc.*, 157 F. Supp. 2d 779 (E.D. Mich. 2001)).  The third factor also weighs in Plaintiff's favor.  Plaintiff is located in the United States, and therefore litigating here would be more convenient for him.  Finally, neither the fourth nor the fifth factors appear relevant to whether non-domestic defendants are subject to personal jurisdiction in the United States.

In sum, Defendant Mathews purposefully directed activities at the United States and should

have reasonably expected that those activities would subject her to litigation here.  *See Pandaw*, 842

F. Supp. 2d at 1313.  Moreover, the Belfast Defendants have not presented a "compelling case" that

jurisdiction here would be unreasonable.  *See id.*  As such, the Court finds that personal jurisdiction

may be established over Defendant Mathews pursuant to Rule 4(k)(2).

### B.  MERITS

Turning now to the merits, the Court begins by considering whether Plaintiff's RICO claim

against the Belfast Defendants would involve an impermissible extraterritorial application of that

statute.  *See CGC Hldgs. Co., LLC*, 824 F. Supp. 2d at 1208-1209.  The Court would recommend

dismissal of that claim, and without it, there is no basis for personal jurisdiction over any of the

Belfast Defendants.

Plaintiff argues that the Belfast Defendants have significant contacts with the United States,

that their conduct is aimed at victims here, and that the effects of that conduct substantially occurred

here.  However, the only allegations that the Court must take as true are factual ones.  *See Kan. Penn*

*Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (explaining that courts need not take

as true labels, conclusions, or a "formulaic recitation of the elements of a cause of action" (citation

omitted)).  As explained above, Plaintiff's factual allegations include the following.  The Belfast

Defendants were retained by Defendants Bruggeman-Hatch, Gunderson Dettmer, Traut, and

Sparagna, all of whom reside in California, to help secure the removal of certain statements that

Plaintiff published about them on the internet and which Plaintiff maintains are true.  In attempting

to have those statements removed, Defendant Mathews sent correspondence to Plaintiff's postal

address in New Zealand and to his email address.  She also sent a letter and two emails to CSL, the

European company that hosts the website on which the statements were published.  Plaintiff has not

18

plausibly asserted that Defendant Mathews knew he was located in Colorado when she sent those communications. Plaintiff has not alleged that the other Belfast Defendants engaged in any specific conduct related to this action in the United States.

Taken as true, these allegations cannot plausibly establish that the Belfast Defendants engaged in domestic racketeering activity. *See CGC Hldgs. Co., LLC*, 824 F. Supp. 2d at 1209 (citing *United States v. Philip Morris*, 783 F. Sup. 2d 23, 29 (D.D.C. 2011)). It is not enough for the effects of alleged racketeering activity to have occurred in the United States. *See Philip Morris*, 783 F. Supp. 2d at 29 (citing *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2877 (2010)). Moreover, the alleged domestic activity must be the basis for a defendant's alleged RICO liability. *See id.* Even "isolated domestic conduct does not permit RICO to apply to what is essentially foreign activity." *Id.*; *see also Morrison*, 130 S. Ct. at 2884 ("[T]he presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case.") Because Plaintiff does not allege that the Belfast Defendants engaged in domestic racketeering activity, RICO does not apply.

Given the Court's conclusion that Plaintiff's RICO claims against the Belfast Defendants fail as a matter of law, the sole basis for personal jurisdiction over any of them evaporates. Consequently, the Court need not consider whether it would be appropriate to exercise pendent personal jurisdiction over Plaintiff's other claims against the Belfast Defendants.

Finally, Plaintiff requests leave to amend the complaint if the Court finds that dismissal is warranted. However, Plaintiff does not suggest that he can assert any new allegations that would give this Court personal jurisdiction over the Belfast Defendants. Therefore, the Court finds that amending the pleadings in the District of Colorado would be futile and recommends denying

Plaintiff leave to amend his pleadings.

## **CONCLUSION**

Accordingly, the Court respectfully RECOMMENDS that the Motion to Dismiss (filed January 13, 2014; docket # 65) filed by Defendants Paul Tweed, Kathy Mathews, Johnsons Law Firm, and Paul Tweed, LLP be **granted**.

Respectfully submitted this 2nd day of June, 2014, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge