IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02973-REB-MEH

JON A. GOODWIN, an individual, directly and derivatively in the right of and for the benefit of Barra Partners, LLC, a Delaware limited liability company,

      Plaintiff,

v.

MARCIA ANN BRUGGEMAN-HATCH, an individual,
SEAMUS JOHN PAUL HATCH, an individual,
MICHAEL DOUGLAS BOCK, an individual,
ARAN STRATEGIC FINANCE, LLC a limited liability company,
DAVID MARK JARGIELLO, an individual,
BARRY S. LEVIN, an individual,
ROBERT A. EPSEN, an individual,
MATTHEW L. LARRABEE, an individual,
HELLER EHRMAN LLP, a limited liability partnership,
TIMOTHY ROBBINS, an individual,
THOMAS F. VILLENEUVE, an individual,
KENNETH ROBERT MCVAY, an individual,
IVAN ALEXANDER GAVIRIA, an individual,
DANIEL JURG NIEHANS, an individual,
DANIEL E. O'CONNOR, an individual,
SCOTT ARMIENTI, an individual,
JONATHAN M. GLEASON,
SCOTT C. DETTMER, an individual,
ROBERT V. GUNDERSON, JR., an individual,
MICHELLE ROBERTSON, an individual,
GUNDERSON DETTMER STOUGH VILLENEUVE FRANKLIN & HACHIGIAN, LLP, a limited liability partnership,
MILES FREDERICK EHRLICH, an individual,
RAMSEY & EHRLICH LLP, a limited liability partnership,
DENELLE MARIE DIXON-THAYER, an individual,
JOHN DANIEL SHARP, an individual,
MICHAEL ALEXANDER KAHN, an individual,
DIANE D. BLICK, an individual,
FOLGER LEVIN KAHN, LLP, a limited liability partnership,
RICHARD S. WARLEY, an individual,
SAVVIS, INC., a corporation,
SUE M. KAPLAN, an individual,
TINA LOUISE SCATUORCHIO-GOODWIN, an individual,
HARRY STORER SCOTT, an individual,

NEVILLE L. JOHNSON, an individual,
DOUGLAS L. JOHNSON, an individual,
LAN PHOJNG VU, an individual,
JOHN DALE FOWLER, an individual,
JONATHAN MARTIN TURCO, an individual,
VIKTORIYA CASSIS, an individual,
RADINE SABLAN, an individual,
ANGELA TORABYAN, an individual,
SHAKE ANDREASIAN, an individual,
JOHNSON & JOHNSON LLP, a limited liability partnership,
PAUL WILLIAM TWEED, an individual,
KATHRYN HELENA LOUISE MATHEWS, an individual,
PAUL TWEED LLP, a business entity,
JOHNSONS LAW FIRM, a business entity,
VAL COOK, an individual,
TWITTER, INC., a corporation,
VENTURE LAW GROUP, a professional corporation,
HELLER EHRMAN (CALIFORNIA), a professional corporation,
SIMON LUK, an individual,
RUSSELL A. STAMETS, an individual,
JEFFREY L. SCHOTTLER, an individual,
JOHN C. GONZALEZ, an individual,
KANNAN P. SRINIVASAN, an individual,
MAYNARD JR GAMEZ, an individual,
SEAN HART, an individual,
EMILY WARREN CHURCH, an individual,
ARAN VENTURES, a business entity, form unknown,
ARAN DEVELOPMENT, a business entity, form unknown,
ERIC VAUGHN TRAUT, an individual,
DIANA BIAFORA SPARAGNA, an individual,
BARRA PARTNERS, LLC, actually named as nominal defendant,

       Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

    The following Motions are before the Court (collectively, "Motions to Dismiss):

(1)    Defendants Marcia and Seamus Hatch's Motion to Dismiss (<u>filed December 30, 2013;</u>

Case 1:13-cv-02973-REB-MEH   Document 342   Filed 07/24/14   USDC Colorado   Page 3 of 26

docket #56);

(2)    Defendant Jeffrey Schottler's Motion for Judgment on the Pleadings Pursuant to F.R.C.P. 12(c) (filed April 18, 2014; docket #243);

(3)    Defendant Aran Strategic Finance, LLC's Motion to Dismiss (filed April 25, 2014; docket #261);

(4)    Defendant Gunderson Dettmer Stough Villeneuve Franklin & Hachigian, LLP's Motion to Dismiss (filed May 2, 2014; docket #265);

(5)    Defendant Savvis Inc.'s Motion to Dismiss (filed May 5, 2014; docket #268);

(6)    Renewed Joint Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), 12(b)(1) and 12(b)(2) filed by Defendants Heller Ehrman (California), a Professional Corporation, and Robert A. Epsen (filed May 19, 2014; docket #292).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1(c), the Motions to Dismiss are referred to this Court for recommendation. They are briefed to the extent required by court rules and the prevailing law, and the Court finds that oral argument is not necessary for their adjudication. For the reasons that follow, the Court respectfully RECOMMENDS that the Motions to Dismiss be **granted**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United*

3

## BACKGROUND

Plaintiff, Jon A. Goodwin, initiated this action on October 30, 2013, and proceeds *pro se*. The complaint contains twenty-two (22) claims for relief against sixty-six (66) Defendants arising from the 2003 break-up of Barra Partners, LLC, ("Barra Partners"), a merchant banking firm. Docket #1. The 380-page complaint alleges a criminal enterprise and a conspiracy against Plaintiff that give rise to claims of racketeering, civil rights violations, breaches of contract, and fraud, among other claims. *Id.*

Plaintiff first filed a lawsuit on November 24, 2004 in San Francisco Superior Court, alleging ten claims for relief against Defendants Hatch, Bock, Bruggeman-Hatch, Stamets, Jargiello, Luk, and Ehrman, Case number CGC-04-43-436623. *Id.* at ¶ 457; docket #56-2. The Superior Court dismissed the case without prejudice in 2005 for failure to prosecute. Docket #1 at ¶ 457. Since then, four lawsuits have been filed against Plaintiff in California state courts. First, on November 6, 2006, Defendant Marcia Bruggeman-Hatch filed a "Petition for Injunction Prohibiting Harassment" against Plaintiff, Case number CCH-06-565565 *Id.* at ¶ 529. Second, on November 6, 2006, Defendant Bruggeman-Hatch filed a personal injury complaint against Plaintiff, Case number CGC-06-457679. *Id.* at ¶ 535. Third, on November 8, 2006, Defendant Seamus Hatch filed "Petition for Injunction Prohibiting Harassment" against Plaintiff, Case number CCH-06-565574. *Id.* at ¶ 532. Fourth, in 2010, Defendant Bruggeman-Hatch sought another injunction against Plaintiff, Case number BC446227. Docket # 1-2 at pp. 198-203. Temporary restraining orders were granted in the first and third actions, and default judgments were entered in the second and fourth actions.

---

*States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

The present Motions to Dismiss are based on grounds that the claims are barred by the statutes of limitation and the allegations fail to state claims upon which relief may be granted.  The Motion to Dismiss by Defendants Heller Ehrman PC and Robert Epsen also argues that this Court lacks personal jurisdiction over them.  The Court will first address the personal jurisdiction argument, and will then address whether any of the claims are time-barred or, otherwise, fail to state a claim upon which relief may be granted.  *See Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (recognizing that "a federal court may not rule on the merits of a case without first determining that it has jurisdiction over . . . the parties") (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 93-102 (1998)).

## LEGAL STANDARDS

### I.    Dismissal under Fed. R. Civ. P. 12(b)(2)

A plaintiff bears the burden of establishing personal jurisdiction over each defendant. *Grynberg v. Ivanhoe Energy, Inc.*, 666 F. Supp. 2d 1218, 1229 (D. Colo. 2009) (citing *OMI Holdings, Inc. v. Royal Ins. Co. Of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)).  The Court accepts a plaintiff's well-pled allegations as true to determine whether the plaintiff has made a prima facie showing that the defendants are subject to the Court's personal jurisdiction. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  The Court "may also consider affidavits and other written materials submitted by the parties." *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F.Supp.2d 1186, 1189 (D. Colo. 2004).

The Due Process Clause permits the exercise of personal jurisdiction over nonresident defendants when two conditions are met.  First, a defendant must have "minimum contacts" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Second, if sufficient

minimum contacts are shown, the Due Process Clause requires that the exercise of personal jurisdiction over the defendant would not "offend traditional notions of fair play and substantial justice." *Impact Prods.*, 341 F. Supp. 2d at 1190.

The "minimum contacts" standard may be met in two ways. First, a court may, consistent with due process, assert specific jurisdiction over a nonresident defendant "if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations omitted). Where a court's exercise of jurisdiction does not directly arise from or relate to a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415-16 (1984). However, to be subject to general jurisdiction in a forum state, a defendant's affiliations with that state must be "so 'continuous and systematic' as to render [it] essentially at home" there. *Daimler AG v. Bauman*, --- U.S. ---, ---, 134 S. Ct. 746, 761 (2014) (internal quotations and citation omitted).

## II.     Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. *Twombly* requires a two prong analysis. First, a court must identify "the allegations in the

complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-81. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950. If the allegations show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

### III.    Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

# ANALYSIS

## I.    Personal Jurisdiction

Defendants Heller Ehrman PC and Robert Epsen contend that the Court lacks personal jurisdiction over them because they do not have minimum contacts with Colorado.  Defendant Heller Ehrman PC is a separate entity from Defendant Heller Ehrman LLP, through which its shareholders practice law.  *See* docket #292-3, Affidavit of Robert Epsen, ¶5.  Defendant Epsen was a shareholder at Heller Ehrman PC from 1984 until 2005, but continued to practice law for Heller Ehrman LLP until its dissolution in 2008.  *Id.*  From 1997 until 2006, Defendant Epsen served as general counsel for Heller Ehrman LLP.  *Id.*

Plaintiff contends that Heller Ehrman PC and Epsen purposefully directed activities at residents of Colorado because they transacted business with Defendants Barra Partners and Aran Finance, which were citizens of Colorado.  *See* docket #1 at ¶ 22.  Aran Finance maintained its primary administrative offices in Littleton, Colorado.  *Id.*  Barra Partners maintained an office, an address for tax matters and correspondence, and a bank account in Colorado.  *Id.* at ¶¶ 9, 23.  Thus, Barra Partners and Aran Finance were Colorado residents.

Heller Ehrman PC does not dispute that the complaint alleges it purposefully directed activities at Aran Finance and Barra Partners.  *See id.* at 293-300.  Instead, Heller Ehrman PC argues that it could not have transacted any business in Colorado in the past five years because the entity through which its shareholders practice law, Heller Ehrman LLP, dissolved in 2008.  This timing argument is relevant to the statute of limitations issue, but not to the issue of personal jurisdiction.  *When* the "purposefully directed activity" occurred is irrelevant to the question of specific jurisdiction as long as "the litigation results from alleged injuries that arise out of or relate to those

activities." *Burger King Corp.*, 471 U.S. at 472.

Heller Ehrman also argues that Plaintiff alleged in his 2004 lawsuit that all of the acts in that complaint occurred in California, and the claims set forth in the current complaint are identical to those in the 2004 complaint. However, specific jurisdiction is acquired by activities *directed at Colorado residents* and does not require those activities take place in Colorado. *See id.* Barra Partners and Aran Finance were Colorado residents, and the complaint alleges that Heller Ehrman specifically directed activities at them, and that those activities injured Plaintiff and gave rise to this litigation. When and where those activities occurred does not affect the question of specific jurisdiction. Thus, Plaintiff has established that Heller Ehrman PC has minimum contacts with Colorado.

Aside from the inconvenience of litigating this action long distance, Heller Ehrman does not provide any reason that exercising jurisdiction over it would "offend notions of fair play and substantial justice." *Impact Prods.*, 341 F. Supp. 2d at 1190. Thus, this Court finds it has personal jurisdiction over Heller Ehrman.

Jurisdiction over Heller Ehrman does not confer jurisdiction over Epsen, despite his role as general counsel of the firm. *See Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987) ("Jurisdiction over the representatives of a corporation may not be predicated on jurisdiction over the corporation itself, and jurisdiction over the individual officers and directors must be based on their individual contacts with the forum state."). Plaintiff does not allege any specific acts by Epsen that were directed at Barra Partners or Aran Finance, and there is no basis to assert general jurisdiction over him. Accordingly, the Court finds Epsen does not have minimum contacts with Colorado.

Aside from the traditional minimum contacts analysis, in certain circumstances, the RICO statute also may authorize personal jurisdiction over out-of-state defendants. *See Cory v. Aztec Steel Bldg., Inc*, 468 F.3d 1226, 1231 (10th Cir. 2006); *see also* 18 U.S.C. § 1965(b). "[T]o determine whether jurisdiction is appropriate under RICO, the Court engages in a three step analysis: (1) whether personal jurisdiction can be established over one defendant; (2) whether the ends of justice require nationwide service; and (3) whether the exercise of jurisdiction comports with Due Process." *Greenway Nutrients, Inc. v. Blackburn*, --- F. Supp. 2d ---, ---, 2014 WL 1243671, at *14 (D. Colo. Mar. 26, 2014). Plaintiff argues that his RICO claims allow for personal jurisdiction over all of the Defendants in this action. To succeed on this argument, he must establish that nationwide personal jurisdiction is required by "the ends of justice." *Cory*, 468 F.3d at 1231.

Plaintiff contends that he "is a person of limited economic means and has had to borrow funds from family, with limited resources, just to bring and serve this action." Docket #316 at p. 9. Standing alone, Plaintiff having "sustained damages and litigation costs" in Colorado does not satisfy the "end of justice" standard. *See Cory*, at 1232. Plaintiff also asserts that he does not have the funds to support litigating this action in California where his travel, lodging, and security costs (due to alleged threats of physical retaliation by certain Defendants) would be significantly higher. Docket #316 at pp. 9-10. This Court recognizes that a Plaintiff's "financial impediment" to suit in another forum is relevant to the "ends of justice" concept. *See Cory*, at 1232, n.4. Although Plaintiff is not proceeding in forma pauperis in this case, he submitted an Affidavit about his unemployment status and lack of funds as an attachment to his Motion for Appointment of Counsel. *See* docket ##338, 339. Plaintiff's inability to afford counsel suggests that he may be unable to finance litigation in California, or that it would at least be a significant impediment to do so.

10

However, the Court finds that the financial impediment is insufficient to satisfy the "ends of justice" analysis in this case.

Litigating long distance is expensive for any party, and the events giving rise to his claims primarily occurred in northern California, which is also where the majority of the Defendants reside. The litigation costs are undoubtedly significantly higher for the sixty-six Defendants to defend the claims against them in Colorado than are the costs to the Plaintiff for prosecuting this action in California. Should this case progress to discovery, much of the evidence will be obtained in California, and depositions, for example, would be far less costly for most parties in this action to conduct in California than in Colorado. Accordingly, the Court finds that Plaintiff has not shown why the preference against haling these Defendants into an unexpected forum is overcome here. *See Cory*, at 1230-31 (explaining that in imposing the "ends of justice" requirement, "Congress expressed a preference that defendants not be unnecessarily haled into unexpected forums") (citing *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72 (2d Cir. 1998)).

The Court concludes that the RICO statute does not authorize nationwide jurisdiction in this case. Thus, while the Court has personal jurisdiction over Heller Ehrman PC pursuant to the minimum contacts test, it lacks personal jurisdiction over Defendant Epsen, and recommends that Epsen's Motion to Dismiss be granted.

## II.     Statutes of Limitation and Sufficiency of the Pleadings

A.     RICO and COCCA Claims (Claims 1-4)

Plaintiff's RICO claims are governed by a four-year statute of limitations, *Agency Holding Corp. v. Malley-Duff Associates, Inc.*, 483 U.S. 143, 156 (1987), and his Colorado Organized Crime Control Act ("COCCA") claims are governed by a five-year statute of limitations, Colo.Rev.Stat.

§ 13-80-103.8(1)(d).  "To survive a Rule 12(b)(6) motion, a civil RICO claim must allege the defendants (1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Tal v. Hogan*, 453 F.3d 1244, 1269 (10th Cir. 2006).  COCCA is modeled on RICO.  *F.D.I.C. v. Refco Group*, 989 F. Supp. 1052, 1074 (D. Colo. 1997).  A claim under COCCA or RICO requires a showing that the defendant engaged in two or more acts of racketeering activity that are related to the conduct of the enterprise.  *People v. Chaussee*, 880 P.2d 749, 758 (Colo. 1994) (citations omitted).  At least one of the predicate acts alleged must have occurred within the statute of limitations.  *People v. Davis*, 2012 COA 56, ¶ 30.  Here, the majority of Defendants' alleged racketeering activity occurred in 2003, which is outside of the applicable statutes of limitations.  Nonetheless, Plaintiff argues that several RICO acts occurred within the four- and five-year limitations periods.  The Court will address whether any of these constitute a criminal predicate act for purposes of a RICO or COCCA claim.

i.     Extortion

Plaintiff contends that Defendants engaged in extortion against him beginning in 2003 until the filing of this lawsuit.  The only alleged extortionate act that occurred within the statute of limitations was Defendant Bruggeman-Hatch's 2010 action against Plaintiff in California state court. The Tenth Circuit has held that "abusive litigation" or "bad-faith litigation" does not constitute a predicate act of extortion for purposes of establishing a RICO claim.  *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003).  Additionally, predicate acts in a pattern of racketeering activity must "protect the integrity of the ongoing enterprise."  *Chaussee*, 880 P.2d at 760-61.  "Acts that merely protect a defendant's personal interest or attempt to 'cover his tracks' are not sufficiently related to the conduct of the enterprise for liability under COCCA."  *People v. Randall*, 2012 COA

108, ¶ 70 (quoting *Chaussee*, 880 P.2d at 760-61).  Defendant Bruggeman-Hatch initiated the 2010 action in order to prevent Plaintiff from making statements against her, which constitutes an act done to protect her personal interests.  Thus, Defendant Bruggeman-Hatch's 2010 injunction action against Plaintiff, even assuming it was made in bad faith, cannot constitute a predicate act under RICO or COCCA, and cannot be relied upon to overcome the statute of limitations.

       ii.    Mail Fraud

Plaintiff claims that Defendants engaged in mail fraud under 18 U.S.C. §§ 1341 and 1343. Plaintiff's only timely mail fraud allegation for COCCA and RICO purposes is an email sent by Twitter[2] to Plaintiff telling him it did not "mediate content or intervene in disputes between users." Docket #1 at ¶ 807.  Twitter sent this email in response to a fax sent by Defendant Michelle Robertson[3] stating that some of Plaintiff's Twitter messages were physically threatening.  *Id.* at ¶¶ 803-805.  Defendant Robertson allegedly sent the fax to Twitter at Defendant Bruggeman-Hatch's direction.  *See id.* at ¶ 803.  Sections 1341 and 1343 require a "scheme or artifice to defraud," which is defined in 18 U.S.C. § 1346.  The Supreme Court has held that § 1346 criminalizes only bribes and kickbacks.  *Skilling v. U.S.*, 561 U.S. 358, 408-09 (2010).  The fax reporting that Plaintiff was making threatening Twitter messages does not establish that Defendants engaged in bribes or kickbacks.  Thus, this Court finds that Plaintiff has not alleged sufficient facts to establish a timely predicate act of mail fraud to preserve his COCCA and RICO claims.

---

[2] Twitter's Motion to Dismiss was granted on July 7, 2014, and it is no longer a party in this action.  *See* docket #331.

[3] This Court recommended granting Defendant Robertson's Motion to Dismiss [docket #266] for lack of personal jurisdiction.  *See* docket #336.

### iii.   Witness Tampering

Plaintiff next claims that Defendants' alleged witness tampering under 18 U.S.C. §§ 1512 and 1513 constituted a timely predicate act for his COCCA and RICO claims.  Plaintiff's witness tampering claims are based on allegations that emails were sent to him on October 15, 2010 and March 22, 2011, one with a link to a website about coffins and the other highlighting the word "murder."  Docket #1 at ¶ 917(j)-(k).  These acts do not constitute witness tampering, because §§ 1512 and 1513 are actionable only if the tampering takes place "in an official proceeding," which is defined in §1515(a)(1) to include only federal proceedings.  *Deck*, 349 F.3d at 1257.  Plaintiff's only allegations of witness tampering within the statute of limitations are email messages, and he does not allege that any federal proceeding occurred in relation to his COCCA or RICO actions.  Additionally, Plaintiff does not allege that the email messages were sent by Defendants.

Accordingly, this Court finds that Plaintiff cannot rely on witness tampering as a timely predicate act to preserve his COCCA and RICO claims.

### iv.   Witness Retaliation

Finally, Plaintiff contends that Defendants' acts of witness retaliation in violation of Colo.Rev.Stat. § 18-8-706 constitute timely racketeering activity.  "An individual commits retaliation against a witness or victim if such person uses a threat, act of harassment . . . or act of harm or injury upon any person or property, which action is directed to or committed upon a witness or a victim of any crime . . . as retaliation or retribution against such witness or victim."  Colo.Rev.Stat. § 18-8-706 .  The only alleged acts giving rise to this claim are the email messages described in section II(A)(iii) above and the 2010 injunction action.  Again, Plaintiff does not allege that the email messages were sent by Defendants.  More importantly, despite Plaintiff's efforts, there

have been no criminal proceedings – or even criminal investigations – against Defendants that are related to Plaintiff's allegations.  Thus, it cannot be inferred that any threats or acts of harassment against Plaintiff were committed as "retaliation or retribution" for Plaintiff's witnessing or being a victim of a crime.

Accordingly, the Court finds that Plaintiff has not sufficiently alleged any predicate acts that occurred within the statutes of limitations for his COCCA and RICO claims, and the Court recommends dismissing those claims.

B.      Constitutional Claims (Claims 5-10)

Plaintiff's §§ 1983 and 1985 claims are subject to two-year statutes of limitation.  *Robinson v. Younger*, No. 05–cv–01028, 2007 WL 628065, at *3 (D. Colo.  Feb. 26, 2007) (applying two-year statute of limitations period to § 1983 claim) ; *Lyons v. Kyner*, 367 F. App'x 878, 881–82 (10th Cir. 2010) (applying two-year statute of limitations period to claims under § 1985(3)).

A section 1983 claim "accrues when facts that would support a cause of action are or should be apparent."  *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006).  To state a claim for relief in an action brought under § 1983, a plaintiff must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.  *Am. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  A private person acts "under color" of law for purposes of § 1983 actions when "he is a willful participant in joint action with the State or its agents."  *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).

Plaintiff's § 1983 claims arise from 2006 and 2010 California actions against him.  Docket #1 at ¶¶ 1003-1038.  The default judgment in the 2010 injunction action was entered on August 29, 2011, and the other actions were resolved earlier.  Plaintiff initiated this action on October 30, 2013,

more than two years after the facts supporting his civil rights claims should have been apparent. Thus, the Court finds that the statute of limitations bars his § 1983 claims.

"The limitations period for a § 1985(3) action runs from the occurrence of the last overt act resulting in damage to the plaintiff." *Lyons*, 367 Fed App'x. at 882. Plaintiff's § 1985 claims arise from his stay in Puerto Rico in December 2003, and he alleges no overt acts related to his § 1985 claim that occurred after that time period. Docket #1 at ¶¶ 992-1002. Accordingly, the Court finds that his § 1985 claims are barred by the statute of limitations.

C.      State Law Claims (Claims 11-20)

Plaintiff asserts claims for abuse of process, negligence, breaches of contract, breaches of fiduciary duty, conversion, misappropriation of trade secrets, fraud, intentional infliction of emotional distress, and civil conspiracy. Docket #1 at pp. 350-370. Where, as here, a federal court may exercise supplemental jurisdiction over state law claims, the forum state's choice-of-law rules apply. *BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1103 (10th Cir. 1999). Colorado applies the "most significant relationship" test to resolve choice of law questions in tort cases. *United States Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1143 (10th Cir. 2009) (citing *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 509-10 (Colo. 2007)). Under that test, courts consider where the conduct causing the injury occurred, where the parties' relationship is centered, and parties' residences, among other factors. *AE, Inc.*, 168 P.3d at 510. Here, most of the alleged conduct occurred in California, the parties' relationships are centered in California, and most of the parties reside in California. Thus, California's statutes of limitations apply to the common law claims.

A statute of limitations begins to run when the cause of action accrues, which is generally

when the wrongful act is committed and liability arises. *Fox v. Ethicon Endo–Surgery, Inc.*, 110 P.3d 914, 919-21, 35 Cal. 4th 798, 806–09 (Cal. 2005). However, in California, accrual may be delayed until a plaintiff discovers the wrongful act or should have known that his or her injury was caused by wrongdoing. *Id.* To rely on the doctrine of delayed discovery, "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 803 (quoting *McKelvey v. Boeing North American, Inc.*, 74 Cal. App. 4th 151, 160 (Cal. App. 1999)). Under this rule, "a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." *Id.* A plaintiff relying on delayed discovery thus bears the burden to show diligence, and conclusory allegations will not withstand dismissal. *Id.* at 809.

i.    Abuse of Process (Claim 11)

A two-year statute of limitations applies to the abuse of process claim. California Code of Civil Procedure § 335.1. The abuse of process claim is based on a 2006 injunction action against Plaintiff; a default judgment was entered in that case on April 10, 2007. Docket #1 at ¶¶ 554-556, 1039. Plaintiff argues that the statute of limitations did not accrue in 2007 because he did not learn of the default judgment until August 17, 2012. However, his complaint alleges that he learned of the 2006 litigation and its 2007 judgment in April 2011 when he received a voice mail message from Defendant Cook, a police detective in Redwood City, California. *Id.* at ¶ 635. The message informed Plaintiff that a criminal case had been filed against him, and that there was already a

restraining order from a civil case. Plaintiff told Defendant Cook that he was "shocked to learn there is a restraining order against him[.]" *Id.* at ¶ 636. Plaintiff's allegations demonstrate that he learned about the cause of action in April 2011; he filed this action on October 30, 2013, more than two years later.

Even without the allegations about Defendant Cook's telephone call, Plaintiff's assertion that he learned of the judgment in 2012 is insufficient to meet the burden of establishing that a "reasonable investigation [in 2006 or 2007] would not have revealed a factual basis for [the abuse of process] cause of action." *Fox*, 35 Cal. 4th at 803. In light of Plaintiff's 2004 lawsuit against Bruggeman-Hatch and other Defendants, Plaintiff's efforts to pursue criminal charges against her and other Defendants (*see* docket #1 at ¶ 457), his alleged "vicious online campaign of defamation and harassment" (*see* docket #89 at p.6; *see also* docket #1-2, Exhibit E, at pp. 189-196), and his contentious history with Defendants as detailed in the complaint, it was not unexpected that legal action would be taken against him in northern California.

The Court finds Plaintiff has not established that the doctrine of delayed discovery applies to the abuse of process claim. Accordingly, the claim is barred by the statute of limitations.

ii.     Negligence, Breaches of Contract, Breaches of Fiduciary Duty, Conversion, and Misappropriation of Trade Secrets (Claims 12-17)

The remaining common law claims are governed by two-, three-, or four-year statutes of limitations. California Code of Civil Procedure § 335.1 (two-year statute of limitations for negligence and intentional infliction of emotional distress); § 337 (four-year statute of limitations for breach of contract); § 339 (two-year statute of limitations for breach of implied contract); § 338 (three-year statute of limitations for conversion and fraudulent scheme); § 343 (four-year statute of limitations for breach of fiduciary duty and civil conspiracy); § 3426.6 (three-year statute of

limitations for misappropriation of trade secrets).  These claims arise from the 2003 breakup of Barra Partners.  Docket #1 at ¶¶ 1043-1112.  The causes of action for negligence, breaches of contract, breaches of fiduciary duty, conversion and civil conspiracy accrued at least by November 24, 2004, when Plaintiff brought these claims against certain Defendants in California Superior Court.  *See* docket #56-2.  Though the current action contains additional factual allegations and names additional Defendants, the claims in this action arise from the same 2003 Barra Partners breakup that gave rise to the 2004 claims.  Moreover, though not included in the 2004 action, the claim for misappropriation of trade secrets also arise from the 2003 Barra Partners breakup.

Plaintiff's position that the statute of limitation should be tolled because of the Defendants' "intimidation" raises an equitable estoppel argument, and does not challenge the applicable statutes of limitation or the claims' accrual dates.  The Court will address his equitable estoppel argument, as it pertains to all of the common law claims, below.  Accordingly, the Court finds that the claims for negligence, breaches of contract, breaches of fiduciary duty, conversion, and misappropriation of trade secrets are untimely.

### iii.    Fraudulent Scheme (Claim 18)

The California Code of Civil Procedure § 338 provides a  three-year statute of limitations for a fraudulent scheme claim.  The elements of fraud or deceit are (1) misrepresentation, (2) with knowledge of its falsity, (3) with intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage." *Conroy v. Regents of Univ. of Cal.*, 45 Cal. 4th 1244, 1255 (Cal. App. 2009).  Plaintiff's fraudulent scheme claim is based upon the 2003 Barra Partners breakup, his 2005 reporting of criminal activity that the California U.S. Attorney's office did not pursue, and the California state actions against him.  *See* docket #1 at ¶¶ 1071-99.  According to

19

Plaintiff's allegations, the elements of fraud – including resulting monetary damage – were met by 2003. Nonetheless, Plaintiff contends that certain Defendants continued to perpetrate fraud against him through the California state actions.

To the extent Defendant can rely on the 2010 California state action and its resulting 2011 injunction for a timely fraud claim, his claim is barred by the *Rooker-Feldman* doctrine. The *Rooker–Feldman* doctrine is a jurisdictional prohibition that is based upon 28 U.S.C. § 1257, which holds that federal review of state court judgments may be obtained only in the United States Supreme Court. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *see also Johnson v. DeGrandy*, 512 U.S. 997, 1005–06 (1994) (holding that the *Rooker–Feldman* doctrine bars "a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court[.]"). As this Court understands it, Plaintiff alleges that Defendant Bruggeman-Hatch committed fraud on the California state courts because the allegations in her 2010 complaint contained misrepresentations.[4] However, establishing the second and third elements of fraud – that

---

[4] California courts differentiate between "extrinsic" and "intrinsic" fraud. "Extrinsic fraud occurs when a party is deprived of the opportunity to present his claim or defense to the court; where he was kept ignorant or, other than from his own negligence, fraudulently prevented from fully participating in the proceeding. . . . The essence of extrinsic fraud is one party's preventing the other from having his day in court." *City & Cnty. of San Francisco v. Catagena*, 35 Cal.App.4th 1061, 1067 (Cal. App. 1996). By contrast, intrinsic fraud is any fraud committed in the course of the proceedings. "Any fraud is intrinsic if a party has been given notice of the action and has not been prevented from participating therein, that is, if he or she had the opportunity to present his or her case and to protect himself or herself from any mistake or fraud of his or her adversary, but unreasonably neglected to do so." *In re Marriage of Stevenot*, 154 Cal.App.3d 1051, 1069 (Cal. App. 1984). With regard to the 2010 California case – the only timely allegation of fraud – Plaintiff alleges both extrinsic and intrinsic fraud. "After the time for seeking a new trial has expired and any appeals have been exhausted, a final judgment may not be directly attacked and set aside on the ground that evidence has been suppressed, concealed, or falsified; in the language of the cases, such fraud is 'intrinsic' rather than

Defendant Bruggeman-Hatch knew the allegations were false and that the California court relied on those misrepresentations – requires challenging the California state court's judgment.  *See* docket #1-2 at exhibit F.  Because the *Rooker-Feldman* doctrine prohibits this Court from reviewing the California state court's judgment, Plaintiff cannot plausibly allege a fraud claim on the grounds that the 2011 judgment is based on the California court's reliance on false misrepresentations.

Accordingly, the Court finds that Plaintiff's fraudulent scheme claim is barred by the statute of limitations and the *Rooker-Feldman* doctrine.

iv.     Intentional Infliction of Emotional Distress (Claim 19)

The California Code of Civil Procedure § 335.1 provides a two-year statute of limitations for intentional infliction of emotional distress.  "The elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. . . . Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.  The defendant must have engaged in conduct intended to inflict injury or engaged in with the realization that injury will result."  *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (Cal. 1991) (quotations and citations omitted).

'extrinsic.'"  *Cedars-Sinai Medical Center v. Superior Court*, 18 Cal. 4th 1, 10 (Cal. 1998).  A final judgment may only be vacated on the basis of extrinsic fraud, and only upon a showing that the "false facts" upon which the judgment was premised "could not reasonably have been discovered prior to the entry of judgment."  *Cartagena*, 35 Cal. App. 4th at 1068.  Thus, any fraud claim related to the 2010 injunction action is very limited.

Plaintiff does not specify which factual allegations in his 380-page complaint give rise to this claim; it appears he relies on all of the allegations considered as a whole. *See* docket #1 at ¶¶ 1100-1103.  To the extent Plaintiff relies on the California state actions as grounds for his claim of intentional infliction of emotional distress, it is untimely.  The default judgment in the 2010 injunction action was entered on August 29, 2011, and the other actions were resolved earlier.  Plaintiff initiated this action on October 30, 2013.  The only allegations that occurred less than two years before the initiation of this lawsuit involve emails sent by Twitter to Plaintiff, as discussed in section II(A)(ii) above.

Twitter sent an email to Plaintiff informing him of an alleged threatening Twitter message that had been posted from Plaintiff's Twitter account.  Docket #1 at ¶804.  Twitter sent this email in response to a fax sent by Defendant Robertson stating that some of Plaintiff's Twitter messages were physically threatening.  *Id*. at ¶¶ 803-805.  Defendant Robertson allegedly sent the email to Twitter at Defendant Bruggeman-Hatch's direction.  *Id*. at ¶ 803.  Plaintiff responded to Twitter that he had not posted the threatening Twitter message, and asked Twitter to confirm this.  *Id*. at 806.  On December 6, 2011 Twitter told Plaintiff it did not "mediate content or intervene in disputes between users."  *Id*. at ¶ 807.

Viewing the facts in the light most favorable to Plaintiff, none of the alleged conduct regarding the Twitter messages is "extreme and outrageous."  First, the Court need not address Defendant Robertson or Twitter's intentions, as Twitter has been dismissed as a party, *see* docket #331, and this Court recommended granting Defendant Robertson's Motion to Dismiss for lack of personal jurisdiction, *see* docket #336.  Even assuming Defendant Bruggeman-Hatch maliciously intended to falsely accuse Plaintiff of posting a threatening Twitter message, this is not "so extreme

22

as to exceed all bounds of that usually tolerated in a civilized community." *Christensen*, 54 Cal.3d at 903.  Her alleged "attack" on Plaintiff was indirect, and it is difficult to imagine how she intended to cause Plaintiff "severe or extreme emotional distress" by directing an assistant to report threatening Twitter messages to Twitter's "Trust and Safety" unit.  Thus, the Court finds that the only timely alleged facts fail to state a claim for intentional infliction of emotional distress.  Any remaining allegations that Plaintiff intended as a basis for this claim are barred by the two-year statute of limitations.

> v.      Civil Conspiracy (Claim 20)

The California Code of Civil Procedure § 343 provides a four-year statute of limitations for civil conspiracy.  Civil conspiracy is "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.  By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510-11 (Cal. 1994).  "There is no separate tort of civil conspiracy and no action for conspiracy to commit a tort unless the underlying tort is committed and damage results therefrom."  *Prekashpalan v. Engstrom, Lipscomb and Lack*, 223 Cal. App. 4th 1105, 1136 (Cal. App. 2014).  As the above analysis indicates, Plaintiff has failed to adequately plead a timely tort claim for relief against any defendants.  Without a sufficient underlying tort claim, Plaintiff cannot assert civil conspiracy.  Accordingly, the Court finds that Plaintiff has failed to state a claim for civil conspiracy.

> vi.      Equitable Tolling

Equitable tolling suspends the statute of limitations where a plaintiff has several alternative

remedies, makes a good faith, reasonable decision to pursue one remedy, and it later becomes necessary to pursue the other. *Elkins v. Derby*, 12 Cal. 3d 410, 412 (Cal. 1974). It is "designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 99 (Cal. 2008) (internal quotation and citation omitted). In order to prove the applicability of the equitable tolling doctrine, Plaintiff must satisfy three elements: "timely notice, and lack of prejudice, to the defendant[s], and reasonable and good faith conduct on the part of the plaintiff." *Id.* at 102. To the extent Plaintiff timely notified Defendants of the current claims based on the 2004 litigation, his revival of the same claims nine years later in a different forum state does not demonstrate reasonable and good faith conduct. To the extent Plaintiff raises new and distinct claims from his 2004 action, he has not timely notified Defendants of the claims. Although Plaintiff allegedly pursued a criminal investigation, his efforts did not come to fruition and, therefore, did not provide timely notice to Defendants.

Accordingly, the Court finds that the equitable tolling doctrine does not apply here.

vii.    Equitable Estoppel

Equitable estoppel addresses "the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 383 (Cal. 2003) (internal quotation and citation omitted). "Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense." *Id.* at 384. "Estoppel may certainly be invoked where there are acts of violence or intimidation that are intended to prevent the filing of a claim." *John R. v. Oakland Unified Sch.*

24

*Dist.*, 48 Cal. 3d 438, 445 (Cal. 1989).  For example, in *John R.* the court found that the doctrine of equitable estoppel could be applied when a student failed to tell his parents about a teacher's sexual abuse because the teacher threatened to retaliate if he disclosed the incidents.  *Id.* at 445–46.  On the other hand, in *K.J. v. Arcadia Unified Sch. Dist.*, 172 Cal. App. 4th 1229, 1240 (Cal. App. 2009), the court refused to extend the principle espoused in *John R.* where the plaintiff had not alleged any acts of violence or intimidation that were intended to deter her from presenting a tort claim.  In assessing the propriety of applying equitable estoppel, the court must assess whether any threats occurred, "when the effect of any such threats ceased, [and] whether plaintiffs acted within a reasonable time after the coercive effect of the threats had ended." *Id.* at 446. These are questions of fact. *Id.*

Plaintiff contends that Defendants threatened physical and economic injury if he pursued claims against them.  Specifically, he alleges that "large black athletes" involved in a drug distribution enterprise with Defendants implied "their ability to protect the organization from potential threats with violent acts." Docket #1 at ¶ 865. Plaintiff also alleges that Defendant Hatch told Plaintiff "at the end of the day people who screw with me wish they hadn't" and he could "make people's lives miserable." *Id*. Defendant Bock allegedly told Plaintiff "[y]ou'll be sorry you ever [messed] with us." *Id*. These alleged threats occurred in 2003. Plaintiff filed a lawsuit against Defendants in 2004, and continued to pursue criminal charges against them.  Additionally, Plaintiff maintained a website outlining his allegations against Defendants, and designed a "wanted" poster for Defendant Hatch in 2006. *See* docket #1-2 at Exhibit E.  Given that Plaintiff brought claims against Defendants after the alleged threats occurred, continued to pursue criminal charges and to expose Defendants' conduct, the Court finds that the alleged threats in 2003 did not delay or prevent

Plaintiff from bringing the current lawsuit.  Accordingly, equitable estoppel cannot be invoked here.

Plaintiff has failed to allege sufficient facts to state claims for relief that fall within the applicable statutes of limitation.  Therefore, the Court recommends dismissing his claims.  In addition, because this Court finds Plaintiff has failed to state claims for relief, it also recommends dismissing Plaintiff's requests for injunctive relief and declaratory judgment (claims 21 and 22).

Accordingly, the Court respectfully RECOMMENDS that the District Court GRANT: (1) Defendants Marcia and Seamus Hatch's Motion to Dismiss (filed December 30, 2013; docket #56); (2) Defendant Jeffrey Schottler's Motion for Judgment on the Pleadings Pursuant to F.R.C.P. 12(c) (filed April 18, 2014; docket #243); (3) Defendant Aran Strategic Finance, LLC's Motion to Dismiss (filed April 25, 2014; docket #261); (4) Gunderson Dettmer Stough Villeneuve Franklin & Hachigian, LLP's Motion to Dismiss (filed May 2, 2014; docket #265); (5) Defendant Savvis Inc.'s Motion to Dismiss (filed May 5, 2014; docket #268); and (6) Renewed Joint Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), 12(b)(1) and 12(b)(2) filed by Heller Ehrman (California), a Professional Corporation, and Robert A. Epsen (filed May 19, 2014; docket #292).)

Respectfully submitted this 24th day of July, 2014, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge

26